IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

NICHOLAS H. PLACHY,

Defendant.

**4:12CR3049**

**MEMORANDUM OPINION**

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on April 26, 2013.

## I. BACKGROUND

### A. Facts

The defendant was charged with receipt and distribution of child pornography.[1] Pursuant to a conditional plea agreement in which he reserved the right to challenge on appeal the denial of his motion to suppress the evidence obtained in the search, he entered a plea of guilty to Count I of the indictment and agreed to forfeiture of the computer equipment involved in the offense. Filing No. 61; Findings and Recommendation ("F&R"); Filing No. 74, Order. The government agreed to dismiss Count II at sentencing and to move for a three-level reduction for acceptance of responsibility. Filing No. 59, Plea Agreement at 4-5. The court accepted the

---

[1] Specifically, he was charged in Count I of the indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(2), and in Count II with knowingly possessing computer files containing an image of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Indictment. The mandatory minimum sentence for receipt and distribution of child pornography (the crime charged in Count I) is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, possession of child pornography (the crime charged in Count II) has no mandatory minimum and carries a maximum sentence of ten years for a first offender. 18 U.S.C. § 2252(b)(1). Count II was dismissed on motion of the government.

defendant's plea, but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Plachy's sentence under the United States Sentencing Guidelines ("the Guidelines").   Filing No. 61, F&R.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.   Filing No. 88, PSR (sealed) at 3-4.   As part of an investigation, the Lincoln Police Department used automated software to determine that a computer was sharing child pornography through the Internet.   *Id.* at 6.   Police officers downloaded at least five files containing child pornography and obtained a search warrant.   *Id.*   A search warrant was then executed and numerous computers and storage devices were seized by law enforcement.   *Id.* at 3-6.   A forensic examination of the computers and related storage media revealed over 250 gigabytes of videos and digital images of child pornography.   *Id.* at 6.   The material included videos and digital images of graphic sexually explicit conduct and prepubescent minors engaged in sexually explicit conduct.   *Id.*   The defendant received the images from October 2008 to April 2012.   *Id.*   Law enforcement officers conducted an interview while executing the search warrant and Plachy admitted to viewing, possessing, and sharing images and videos of child pornography since he was a minor.   *Id.*

In the plea agreement, the parties stipulated that the defendant's base offense level was 22 under U.S.S.G. § 2G2.2(a)(2).   *Id.* at 4.   They also stipulated to the following upward adjustments:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a four-level increase under

U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[2] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images).  *Id.* at 6-7.  The parties did not agree on whether U.S.S.G. § 2G2.2(b)(1) or § 2G2.2(b)(3) applied in relation to distribution for pecuniary gain or for receipt of a thing of value, but the Probation Office later determined that a five level adjustment for distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, was appropriate.  *Id.* at 9, 17.  The application of these enhancements results in an adjusted offense level of  40.  *Id.* at 10.  After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Plachy's total offense level under the Guidelines is 37.  *Id.*  Plachy has zero criminal history points, resulting in a criminal history category of I.  *Id.*  At offense level 37 and criminal history category I, Plachy's range of imprisonment under the Guidelines would be 210 to 262 months, but the Guidelines sentence is capped at the statutory maximum of twenty years, so the guideline imprisonment range becomes 235 to 240 months. U.S.S.G. § 5G1.1(c)(1).

Plachy is twenty-three years old.  Filing No. 88, PSR at 2.  He has a high school diploma and has attended some college.  *Id.* at 11-12.  He was awarded a full tuition scholarship to the University of Nebraska.  *Id.* at 13.  He has been employed as an office assistant, grocery store meat counter clerk and a Web designer, but has not worked since he was charged with this offense.  *Id.* at 15-16.

---

[2] Under Eighth Circuit case law, the materials possessed by the defendant portray sadistic conduct.  *United States v. Diaz,* 368 F.3d 991, 992 (8th Cir. 2004)*; United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor").

A psychological evaluation indicates that the defendant is at relatively low risk to perpetrate sexual abuse on children in his environment or in the community.  *Id.* at 14.  The psychological report notes that, although the defendant readily admits to chronic use of child pornography and sexual fantasies about children, specifically males, there is no evidence to indicate he has acted on these fantasies beyond his involvement with child pornography.  *Id.*  The defendant admitted during the evaluation that he has taken cellphone pictures of children in public places but has never had any physical contact.  *Id.*  The defendant was diagnosed with the following:  "pedophilia, sexually attracted to both, nonexclusive type; social phobia; and dysthymic disorder."  *Id.*  Further, the psychological report indicates that the "defendant's risk of sexual perpetration is also mitigated by his acknowledgment of the problematic nature of his thinking and his amenability to engage in intensive psychological sex offender treatment."  *Id.*  The record shows the defendant attended individual counseling sessions from July 31, 2012, until November 16, 2012.  *Id.*

The defendant reported he was diagnosed with depression during his senior year of high school, following his parents' divorce.  *Id.* at 13.  He was treated in Lincoln, Nebraska, by a psychiatrist, a psychologist and a counselor form 2007 to 2012.  *Id.*  The defendant has been diagnosed as suffering from depression and attention deficit hyperactivity disorder and has been prescribed Wellbutrin and Vyvanse.  *Id.* at 13-14.  He takes Wellbutrin daily, but has not taken Vyvanse since November 17, 2012.  *Id.* at 14.

At the sentencing hearing, both the government and the defendant indicated that they accepted and adopted the findings in the PSR.  The government moved for an

4

order of restitution on behalf of five victims under 18 U.S.C. § 2252A(a)(2).   Filing No. 81.   The defendant moved for a variance from the Guidelines based on his history and characteristics and because application of the Guidelines results in an extremely harsh imprisonment range for a first-time offender.   Filing No. 77, Motion for variance.   He argued that he should be sentenced to the statutory minimum sentence of five years. The government urged the court to sentence Plachy to the low end of the Guidelines range which amounts to seventeen and a half years.

With respect to the claims for restitution, the government, on behalf of five victims identified as ZJ, PJ, DD, ED, and LD, who are depicted in the "8 kids" series (formerly known as the "Erik Series") seeks restitution in the amount of $2,000 for each victim. Filing No. 81, Amended Statement of Position.   In support of its request, the government has submitted materials compiled by the victims' attorney, including victim impact statements, rehabilitation counseling reports, and an economist's report.   The materials show that the five victims have suffered profound psychological harm and emotional distress and have incurred or will incur between $924,409 and $1,174,060, respectively, in economic losses as a result of having been abused and the subsequent distribution of the images of that abuse.

> B.  Law

> 1.  Sentencing

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened.   *See United States v. Booker,* 543 U.S. 220, 260-61 (2005)*; Gall v. United States,* 552 U.S. 38, 59 (2007).   District courts must "give respectful consideration to the Guidelines," but

are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) *(quoting Booker,* 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant.  *See*, e.g., *Gall*, 552 U.S. 38, 41, 49-50 & n.6*; Booker*, 543 U.S. at 259-60*; Nelson v. United States,* 555 U.S. 350, 351 (2009).  That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."  *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, explaining any variance from the former with reference to the latter.  *See, e.g., United States v. Shannon*, 414 F.3d 921, 923–24 (8th Cir. 2005); *United States v. VandeBrake,* 679 F.3d 1030, 1040 n.7 (explaining that the three steps in the post-*Booker* sentencing process are: (1) to determine the initial advisory guideline sentencing range, (2) to determine any appropriate departures (upward or downward) from the guidelines, and (3) to decide whether to vary from the advisory guideline range based on the factors set forth in § 3553(a), so long as such a variance is reasonable). "'[T]he standards justifying departures under the advisory Guidelines are narrower than the factors enumerated in § 3553(a),' and a variance based on the statutory factors may be appropriate even where a departure would be unjustified."  *United States v. Green*,

691 F.3d 960, 966 (8th Cir. 2012) (quoting *United States v. Solis–Bermudez*, 501 F.3d 882, 886 (8th Cir. 2007).

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough,* 552 U.S. at 108-09*; Rita,* 551 U.S. 338, 349-50 (2007). In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing:   An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 14, 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it is "not an abuse of discretion for a district court to conclude when

sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at 109-110 (quoting *Rita*, 551 U.S. at 350*; see also Gall,* 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48 (October 2009), available at http://www.ussc.gov/Publications/Offense_Types/index.cfm ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited May 3, 2013); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (unpublished paper July 3, 2008), available at http://mow.fd.org (last visited May 3, 2013).  The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.[3]  Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties

---

[3] Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002)*), & 2252A; the Protection of Children from Sexual Predators Act of 1998, codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, Amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996), available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Re ports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/SCAC_Executi ve_Summary.htm (last visited May 3, 2013) ("Sex Offenses Rep't").

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography. 18 U.S.C. § 2252A(a)(1)-(4). The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31.

In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, Amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31. In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism." Child Porn. History Rep't at 37. The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 14-15 (August 1991) ("Mand. Min. Rep't"), available at http://www.ussc.gov/reports.htm (last visited Feb. 18, 2009). The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. Mand. Min. Rep't at 1; see also Fifteen-Year Assessment

at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at § 2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at § 2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at § 2A3.1(a); and 240 months for production of child pornography offenders sentenced at § 2G2.1." Child Porn. History Rep't at 47 n.219, 48 n.224.  The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates."  *Id. at* 54.

Recently, the Commission addressed the obvious sentencing disparity between courts that follow the advisory Guidelines ranges that are recommended in §2G2.1 and those who vary from it.  *See* United States Sentencing Commission, "Report to Congress: Federal Child Pornography Offenses" ("Fed Child Pornography Offenses Rep't")  (Dec.  2012),  available  at  www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_

11

Pornography_Offenses/Full_Report_to_Congress.pdf (last accessed May 3, 2013).  The

Commission noted that "as a result of recent changes in the computer and Internet

technologies that typical non-production offenders use, the existing sentencing scheme

in non-production cases no longer adequately distinguishes among offenders based on

their degrees of culpability."  *Id.*, Executive Summary at ii.  The Commission explains:

> [F]our of the of six sentencing enhancements in §2G2.2 — those relating
> to computer usage and the type and volume of images possessed by
> offenders, which together account for 13 offense levels — now apply to
> most offenders and, thus, fail to differentiate among offenders in terms of
> their culpability.  These enhancements originally were promulgated in an
> earlier technological era, when such factors better served to distinguish
> among offenders.  Indeed, most of the enhancements in §2G2.2, in their
> current or antecedent versions, were promulgated when the typical
> offender obtained child pornography in printed form in the mail.

*Id.*, Exec. Summary at iii.  The Commission also states that "[a] variety of stakeholders

in the federal criminal justice system, including the Department of Justice, the defense

bar, and many in the federal judiciary, are critical of the current non-production penalty

scheme."  *Id.* at xii.  The Commission also notes that stakeholders have voiced the

criticism that "[t]here is no rational basis to treat receipt offenses (which carry a

mandatory minimum five-year term of imprisonment) and possession offenses (which

do not carry a mandatory minimum term of imprisonment) differently under the

guidelines or penal statutes. Virtually all offenders who possess child pornography

previously knowingly received it."  *Id.,* Rep't at 13; *See, e.g., United States v.*

*Richar*dson, 238 F.3d 837, 839–40 (7th Cir. 2001) (Posner, J.) (finding the distinction

between receipt and possession offenses to be "tenuous" and "puzzl[ing]" because

"possessors, unless they fabricate their own [child] pornography, are also receivers [at

some earlier point in time]").

The Commission, in agreement with the general consensus among stakeholders, believes that child pornography offenses are extremely serious, but it "also concurs with the many stakeholders who contend that the sentencing scheme should be revised to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness." *Id.*, Exec. Summary at xix. Importantly, the Commission "believes that Congress should amend the statutory scheme to align the penalties for receipt and possession offenses[,]" noting that its "review of over 2,000 non-production cases has demonstrated that the underlying offense conduct in the typical case in which an offender was prosecuted for possession was indistinguishable from the offense conduct in the typical case in which an offender was prosecuted for receipt." *Id.* at xix, xx. The Commission found "significant unwarranted sentencing disparities among similarly situated offenders based in large part on whether they were charged with possession or receipt." *Id.* at xx, 214-15. Further, "the Commission unanimously believes that, if Congress chooses to align the penalties for possession with the penalties for receipt and maintain a statutory mandatory minimum penalty, that statutory minimum should be less than five years." *Id.,* Rep't at 329.

### 2. Restitution

Under 18 U.S.C. § 2259, the court "shall order restitution" for any offense under statutes criminalizing sexual exploitation and abuse of children. 18 U.S.C. § 2259. Victims of child pornography are harmed by the creation of the images and a new harm is caused each time the images are distributed. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2005). Also, the Supreme Court has recognized that "[t]he distribution of

photographs and images depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children" and that "the harm to the child is exacerbated" when their images are circulated. *New York v. Ferber*, 458 U.S. 747, 759 (1982). Restitution is not only a means of making a victim whole, it also serves punitive and rehabilitative purposes. *See Hughey v. United States*, 495 U.S. 411, 418 (1990).

Under the statute, restitution is mandatory and a court cannot decline to issue restitution because of either the economic circumstances of the defendant or the fact that the victim is entitled to receive compensation for injuries from another source. 18 U.S.C. § 2259(b)(4). The term "victim" is defined in the statute as "the individual harmed as a result of the commission of" a child abuse or child exploitation crime. 18 U.S.C. § 2259(b)(4)(C). Restitution is also authorized by the Victim and Witness Protection Act, 18 U.S.C. § 3663(a), as incorporated into the Sentencing Guidelines, U.S.S.G. § 5E1.1.

The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by a victim. 18 U.S.C. § 3664(e); *see United States v. Pierce*, 479 F.3d 546, 553 (8th Cir. 2007). Under 18 U.S.C. § 3664(h), a sentencing court is allowed, but not required, to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h); *see United States v. Zander*, 319 F. App'x 146, 150 (3d Cir. 2009) ; *cf. United States v. Crandon*, 173 F.3d 122, 126 n.2 (3d Cir. 1999) (holding that once proximate cause is established, § 2259 requires the court to order restitution for the full amount of the victim's losses, and there is nothing in § 2259 that provides for a proportionality analysis).

14

There is presently a split in the Circuits with respect to proximate causation. *See* Fed. Child Pornography Rep't at 118. *Compare United States v. Laraneta*, 700 F.3d 983 (7th Cir. 2012); *United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011); *United States v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011); *United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011); *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011) (all holding that child pornography victims are entitled only to losses that were proximately caused by the individual offender who committed a non-production offense), with *In re Amy Unknown*, 701 F.3d 749 (5th Cir. 2012) (en banc) (holding that victims are entitled to restitution for a variety of losses without a showing of proximate cause, including for medical and mental services, transportation, lost income, and attorneys' fees from those offenders who possessed, received, or distributed child pornography depicting the victims). In the Eighth Circuit, "the government still has to prove that the defendant proximately caused [the victim's] losses." *United States v. Fast*, 709 F.3d 712, 722 (8th Cir. 2013); *see also United States v. Searle*, 65 F. App'x 343, 346 (3d Cir. 2003) (ordering restitution to be paid to victims by the producer of child pornography involving the victims); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) (holding that § 2259 "requires a causal connection between the offense of conviction and the victim's harm" and ordering restitution to be paid to one victim by a defendant who pled guilty to conspiracy to sexually exploit children, had participated in chat rooms, and had made and disseminated a sexually explicit videotape of himself and two other female children to co-conspirators who had actually abused the victim); *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999) (requiring showing of "proximate cause" and stating that the offense conduct must be a "substantial factor" in the victim's losses).

Section 2259 does not impose "a requirement of causation approaching mathematical precision." *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007). Nevertheless, the award must be a reasonable estimate and cannot be an "arbitrary calculation." *See Laney*, 189 F.3d at 967 n.14. The strong Congressional intent underlying § 2259 justifies relaxation of the usual bar against speculative future losses, depending on the type of loss claimed by the victim of child exploitation crimes. *See United States v. Danser*, 270 F.3d 451, 455-56 & n. 5 (7th Cir. 2001). A restitution award is proper "under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of the victim's loss with some reasonable certainty." *Doe*, 488 F.3d at 1160. Evidence that attempted contacts with a victim "were a significant contributing factor in [the victim's] worsening depression and suicide ideation" will establish proximate cause. *Crandon*, 173 F.3d at 126.

## II. DISCUSSION

### A. Guideline Calculation

The court adopts the findings in the PSR. The court finds the defendant's criminal history category is I. His base offense level under the Guidelines is 22. *See* U.S.S.G. § 2G2.2(a)(1). The court finds the following adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing prepubescent minors; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level

increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The court finds a downward adjustment for acceptance of responsibility is warranted. Plachy's resulting offense level is 37. At criminal history category I, Plachy's recommended sentencing range under the Guidelines is 210 to 240 months. The defendant has not moved for any departure and the court finds that no departure is warranted.

### B. Section 3553(a) Factors

Plachy's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines is warranted in this case. The court finds that a sentence of incarceration for 60 months (5 years) followed by a term of supervised release of ten years will fulfill the objectives of sentencing set out in Section 3553(a). With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. However, Plachy's conduct falls at the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children.

A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme. The varying levels of

participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme.  The statutes criminalizing the possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. Although file-sharing arrangements contribute to Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit.  Because he is not engaged in a profit-making enterprise, Plachy is not in the same class as a large-scale distributor of porn. Nonetheless, the size of his collection is troubling, but that fact is mitigated to some degree by the fact that he amassed the collection over a number of years, beginning when he was a minor and would have had less culpability for his conduct.  There is no evidence that Plachy possessed child pornography in order to entice a child, had any improper contact with children, or made attempts to contact a child, although there is some evidence that he photographed some minors.

In making this determination, the court has also considered Plachy's history and characteristics.  This is this Plachy's first felony conviction.  He has one conviction for speeding for which he paid a fine.  He is an intelligent individual.  The court finds Plachy's mental health issues, including depression, and his relative youth lessen his culpability for his actions.  Importantly, psychological testing shows that he is at low risk to commit sexual violence in the future.  Plachy has shown insight into his behavior and has shown remorse and a desire to change.  He has pursued counseling and treatment.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  However, the child pornography Guidelines are driven by

Congressional directive and are not grounded in any scientific, statistical, or empirical method.  The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role.   Given the flaws in the Guidelines' scheme for punishment of non-production Internet child pornography crimes, the court does not accord a high degree of deference to the Guidelines.  The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Plachy's case and the result is a recommended sentence that is greater than necessary to provide just punishment.  Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children.  The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.

As the Commission recently noted, the Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.[4]  There is no logical distinction between the offense of "receipt" of child pornography and possession of child pornography, yet Plachy is subject to a mandatory minimum of five years.  In the

---

[4] In this case, the application of numerous enhancements raise Plachy's offense level from 22 to 37 on a scale that tops out at level 43.  Virtually all of the offenders that have been prosecuted in this court have offense levels of 37 or above.  Offense levels at or near the top of the sentencing table are generally reserved for only the most serious of offenses and the most dangerous of offenders.  This defendant does not belong in that category.

context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor.  In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range.

A five-year sentence would equate to a Guidelines offense level of 25.  With the base offense level established at 22, and the two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who received pornography, did not distribute it at all, and possessed fewer than ten images without any of the images of prepubescent minors and sadistic or masochistic acts that are widely prevalent in child pornography, would receive a sentence at the low end of the statutory range.  Because of the nature of peer-to-peer file sharing programs, a simple possessory crime evolves into a distribution offense as soon as someone accesses a shared file.  In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum.  In this case, as in most, a fairly typical offender with no criminal history has an advisory Guidelines' imprisonment range that is close to the statutory maximum at its low end and would exceed the statutory maximum at the high end, if it were not capped.

 The Guidelines enhancements that apply to Plachy—for use of a computer and for the number and type of images—apply in virtually every case.  The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted

in federal court.  In its recent report, the sentencing Commission itself acknowledges that the current statutory and guideline structure is outmoded, does not make meaningful sentencing distinctions among offenders, and is overly severe in some cases.  The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders.  Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.[5]

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme.   For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system.   The images can be endlessly replicated.  Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection.

The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum

---

[5] A five-level enhancement is provided for possession of more than 600 images.  In the court's experience, virtually all offenders fall in that category, with most possessing thousands of images.  However, whatever qualitative difference in culpability that may be reflected in the number of images, the distinction between possession of hundreds of thousands of images, as opposed to "mere" thousands, is not reflected in the Guidelines at all.

sentence provided in Section 2252A, and need not be augmented by Guidelines enhancements that further increase a defendant's sentence.  The court finds the low-end Guidelines-recommended sentence of seventeen and a half years (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distribution" of images in return for other images) is greater than necessary to protect the public and to deter Plachy from reoffending.  A sentence of 60 months is appropriate to achieve the goals of sentencing in this case.  Five years is a significant term of imprisonment for an offender who has not spent any time in jail.

The public will be adequately protected by a ten-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Plachy.  The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct, but much of that market is driven by compulsive behavior that arguably will not be deterred in any event.  The deterrent effect of a lengthy sentence is further lessened by the international market for child exploitation offenses.  The court finds any additional deterrent value of a sentence longer than five years would be marginal.  Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities.  The history of legislative enactments in this area reflects Congressional concern with the use

of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct and there is no indication that Plachy is likely to engage in any such conduct. Legislative history shows Congressional concern with dangerous child abusers and repeat offenders. The enhancements of increasing severity for quantity and for recidivism are designed to apply to the most dangerous of child pornography offenders and Plachy does not fall in that category. There is no evidence that Plachy has ever abused, or is likely to abuse, children. Plachy's lack of criminal history and low risk of sexual violence suggests that a sentence of five years, followed by ten years of supervised release, is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Plachy's culpability and the far greater culpability of an actual predator or abuser. The sentence of a purveyor or distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant. Moreover, the court finds that a sentence of five years is more proportional to other crimes than the lengthy recommended Guidelines sentence would be.

Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder. Plachy's sentence in this case is close to the median sentence of those sentenced for possession of child

pornography under the statutory provision that does not have a mandatory minimum sentence. Also, a five-year sentence is relatively proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

C. Restitution

The defendant does not dispute the authenticity of the victims' claims, but argues that the victims have not proved a causal connection between the defendant's conduct and any harm that they suffered as victims of abuse.

The court finds that the government has shown that the victims are victims of abuse as defined in the statute who would be entitled to restitution for damages that result from the defendant's conduct. Undoubtedly everyone in the chain of distribution of the images—from the original abuser/producer of the materials to the end-users and possessors—contribute to the victims' ongoing harm. The government has not quantified, however, any increased or incremental damage to the victims that would reflect Plachy's contribution to the victims' injuries and losses.

The victims have suffered substantial mental injuries with long-term effects as the result of the widespread dissemination of these materials. It is clear that Plachy accessed the pornography that features the victims and may have distributed it. However, the victims' damages are also attributable to innumerable others who have accessed the same pornographic material. There is no evidence from which the court can discern the relative value of the incremental injury inflicted by Plachy's conduct as

compared to the fault of the countless others who collectively inflicted these harms on the victims.

Unlike others against whom restitution has been assessed, there has been no showing that this defendant committed any acts above and beyond the possession and limited dissemination of the material, such as creating Internet postings or Web pages featuring the victims, contributing to blogs or chatrooms about the victims, or attempting to contact the victims.  If any of that conduct were involved, the court would find a less tenuous causal connection between the victims' substantial injuries and the actions of an individual defendant.  Here, however, the government has not presented evidence from which the court could allocate damages or apportion fault on any basis other than making an arbitrary calculation. Also, the government has advanced no reasons for its contention that $10,000 would be an appropriate amount to award.  Accordingly, the court finds the government's request for restitution should be denied.

A Judgment and Commitment in conformity with this sentencing memorandum will issue this date.

Dated this 8th day of May, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge